1
2
3
4
5
6
7
8
9
10

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

11
12

Estate of BERNICE KEKONA by its
Personal Representative, Darlene Bloyed,

No.

13

        Plaintiff,

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH

14

vs.

15
16
17
18

ALASKA AIRLINES, INC., an Alaska
corporation; ALASKA AIR GROUP,
INC., a Delaware corporation; and
HUNTLEIGH USA CORPORATION, a
Missouri corporation,

19

        Defendants.

20
21

## I.  SUMMARY OF THE CASE

22
23

1.      Alaska Airlines is required by law to provide gate-to-gate escort services to

24
25

vulnerable travelers. Bernice Kekona was one such traveler. Bernice purchased an Alaska

26

Airlines ticket that included gate-to-gate escort services requested by Bernice and her family.

27

With full knowledge that gate-to-gate service was required and requested, Alaska Airlines

28

abandoned Bernice inside the Portland International Airport. While trying to find her flight

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 1

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

home on her own, Bernice took a horrific fall down an escalator, sustaining injuries that led to her death.

This lawsuit is about holding Alaska Airlines and its agent Huntleigh USA Corporation accountable for their inexcusable neglect of Bernice in not providing this essential and legally required service.

## II. PARTIES

2.     <u>Plaintiff Darlene Bloyed</u>: Plaintiff Darlene Bloyed is a surviving daughter of and Personal Representative of the Estate of Bernice Kekona, deceased, and is a resident of Spokane Valley, Spokane County, Washington, and at all times relevant and material to this Complaint for Survival Action and Wrongful Death.

3.     Bernice Kekona's Estate was filed for Probate in Spokane County Superior Court under Cause Number 17-4-01571-9 and Darlene Bloyed was appointed Personal Representative of that Estate.

4.     Plaintiff Darlene Bloyed is authorized to bring this wrongful death action pursuant to R.C.W. § 4.20.010 (Wrongful Death—Right of Action) and R.C.W. § 4.20.020 (Wrongful Death—Beneficiaries of Action), the survival action pursuant to R.C.W. § 4.20.046 (Survival of Actions) and R.C.W. § 4.20.060 (Action for Personal Injury, Surviving Eight Children), and all statutory and common law claims that exist or may develop in the future.

5.     Kenneth R. Kekona Jr., Darlene Bloyed, Charlene Kaaa, Mary Kekona, George Kekona, Seraphia P. Scungio, Phillip Kekona and Maui Kekona are the surviving children of the deceased Bernice Kekona, who was widowed at the time of her death.

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 2

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

6.     Alaska Airlines, Inc.: Defendant Alaska Airlines, Inc. is a corporation organized and existing under the laws of the State of Alaska, maintaining its principal place of business in the State of Washington, it is registered to do business in the State of Washington and is engaged in business within the County of King.

7.     Alaska Air Group, Inc.: Defendant Alaska Air Group, Inc. is a corporation organized and existing under the laws of the State of Delaware, maintaining its principal place of business in the State of Washington and it is engaged in business within the State of Washington.   Based upon information and belief, Alaska Air Group, Inc. is the holding company for Alaska Airlines, Inc. and is responsible for the acts, omissions and other wrongful conduct of Alaska Airlines, Inc.  At all relevant times, Alaska Air Group, Inc. exercised such dominion and control over Alaska Airlines, Inc. that it is liable according to the law for the acts of Alaska Airlines, Inc. (The Defendants identified in paragraphs 6 and 7 are hereinafter referred to collectively as "Alaska Airlines").

8.     Defendant Huntleigh USA Corporation: Defendant Huntleigh USA Corporation ("Huntleigh") is a corporation organized and existing under the laws of the State of Missouri, maintaining its principal place of business in the State of Missouri, it is registered to do business in the State of Washington and is engaged in business within the County of King.

### III.  JURISDICTION AND VENUE

9.     This Court has jurisdiction over the parties to and the subject matter of this lawsuit.

10.    Plaintiff is a resident of the State of Washington at all material times.

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 3

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

11.   The Court has personal jurisdiction over Defendants as they are corporations that are registered and doing business in the State of Washington, including King County, Washington.

12.   The Court also has personal jurisdiction over Defendants because they maintain a continuous business presence in the State of Washington, including King County, Washington.

13.   Jurisdiction and venue are proper in King County per R.C.W. § 4.12.020(3) as Defendants Alaska Airlines and Huntleigh reside in King County.

14.   Jurisdiction and venue are proper in King County per R.C.W. § 4.12.025(1) and (3) as Defendants Alaska Airlines and Huntleigh reside in King County.

15.   Defendants Alaska Airlines and Huntleigh transact business in King County.

16.   Defendants Alaska Airlines and Huntleigh have an office in King County.

17.   Defendants Alaska Airlines and Huntleigh transacted business in King County at the time the below outlined causes of action occurred.

18.   Defendants Alaska Airlines and Huntleigh, based on the above stated R.C.W. § 4.12.025 factors reside in King County.

## IV.  FACTS

### Nature of the Action

19.   This is an action arising from fatal injuries sustained by Bernice Kekona ("Bernice") on June 7, 2017, resulting in her death on September 20, 2017 in the State of Washington.

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 4

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

**Bernice Kekona**

20.     Bernice resided at her daughter's home in Spokane Valley, Washington, where she lived with her daughter and her two granddaughters.

21.     Bernice was widowed.

22.     In 2012, Bernice had her left leg amputated at the knee and had a prosthetic left leg.

**Bernice Purchased An Alaska Airlines Ticket With
Assistance To and From Gates At All Points**

23.     On March 12, 2017 at 2:59 p.m., Bernice purchased a round trip ticket from Alaska Airlines for transportation between Spokane, Washington and Maui, Hawaii, with related flights and stops.

24.     Bernice paid Alaska Airlines $537.60 for that round trip ticket.

25.     Bernice also paid Alaska Airlines $25.00 for a bag fee.

26.     Bernice was traveling to Maui to visit 7 of her children who live there, along with most of her 24 grandchildren and 31 great-grandchildren.

27.     As part of purchasing that ticket, Bernice requested "mobility/wheelchair" assistance for the entire trip.

28.     Bernice suffered from diabetes, visual impairments, auditory impairments, mental impairments and had an amputated left leg.

29.     Bernice had a Durable Power of Attorney in effect that, among other things, gave her daughter, granddaughter and grandson, the ability to make both financial and medical decisions for her.

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 5

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

30.    To that end, Bernice was a vulnerable adult that could become confused when outside of a controlled, familiar environment such as her home.

31.    Alaska Airlines provides mobility assistance, among other services, to seniors and elderly travelers, and those with disabilities, among others, as required by law.

32.    Mobility escorts are available for passengers with a "wheelchair or scooter," including the "Electric wheelchair/scooter with dry cell battery" that Bernice had, among other types of wheelchairs and scooters.

33.    This service is provided by Alaska Airlines "To/from the gate," "On/off the aircraft," and "To/from connecting flights," among other services provided.

34.    Immediately after paying $537.60 to Alaska Airlines for the round trip ticket that included mobility assistance, Bernice's family called Alaska Airlines to confirm that service would be provided to Bernice for the entire flight.

35.    The services Alaska Airlines was required to provide Bernice are set forth on its "Special Services" list for her Alaska Airlines' flights, and included, but were not limited to, **"ASSIST WITH AISLE CHAIR TO BOARD AND TRANSFER," "ASSIST TO AND FROM GATES AT ALL POINTS,"** and **"ASSISTANCE TO GATES AT ALL POINTS."**

36.    The "Special Services" list for this gate-to-gate escort also included an emergency contact for Bernice with phone number.

### The Accident

37.    Bernice's initial flight on Alaska 989 departed Spokane, Washington on May 8, 2017 at 1:40 p.m. and arrived in Seattle, Washington at 2:38 p.m.

38.    Bernice deplaned in Seattle and was provided her wheelchair.

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 6

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

39.     In accordance with the Special Services list, Bernice was met by her gate-to-gate escort who escorted her from the arrival gate at Alaska 989 to her next flight on Alaska 831.

40.     With that escort, Bernice did not have any issues or suffer any injuries in traveling between gates.

41.     Notably, Bernice had traveled from Spokane, Washington to Maui, Hawaii by herself to visit her children once a year for the prior 3-years using this gate-to-gate escort service without any issues.

42.     Bernice and her family relied on this service provided by Alaska Airlines in making sure Bernice could travel safely.

43.     In that regard, when booking each of these annual trips, just as they did this year, Bernice's family would call and confirm that the gate-to-gate assistance would be provided and it was always provided.

44.     The connecting flight on Alaska 831 departed Seattle, Washington on May 8, 2017 at 5:40 p.m. and arrived in Maui, Hawaii at 8:51 p.m.

45.     Bernice stayed in Maui with her children from May 8, 2017 to June 7, 2017.

46.     On June 6, 2017, the day before Bernice was scheduled to fly back to Spokane, her family confirmed for a second time that Alaska Airlines would be providing Bernice the gate-to-gate escort, which was confirmed.

47.     On June 7, 2017, just prior to Bernice's departure flight, at the airport, Bernice and her family confirmed for a third time at the airport counter that Alaska Airlines would be providing Bernice the gate-to-gate escort, which was confirmed.

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 7

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

48.     The initial return flight on Alaska 862 departed Maui, Hawaii on June 7, 2017 at 11:50 a.m. and arrived in Portland, Oregon at 8:13 p.m.

49.     Bernice paid Alaska Airlines another $25.00 bag fee for this flight.

50.     Prior to the flight's arrival, Alaska Airlines alleges it called Huntleigh, the company it contracts with to provide the gate-to-gate assistance, among other services, to communicate the Special Services requested by Bernice and her family.

51.     Huntleigh alleges Alaska Airlines failed to communicate to Huntleigh that Bernice required the gate-to-gate assistance requested by Bernice and her family and included on the "Special Services" list.

52.     Bernice was the last passenger to get off the airplane.

53.     Two Huntleigh employees met Bernice on the airplane with an aisle chair and then transferred Bernice to her wheelchair just outside the airplane door in the sky bridge/air bridge.

54.     Bernice was seat-belted into her wheelchair.

55.     Once Bernice was in her wheelchair, the Huntleigh employees abandoned her and failed to provide her the promised gate-to-gate assistance as required.

56.     At the top of the sky bridge/air bridge, Bernice showed her ticket to an Alaska Airlines employee who pointed Bernice where to go, but again, failed to provide her the gate-to-gate assistance as required.

57.     To that end, despite Alaska Airlines being required to provide the gate-to-gate escort and Bernice and her family confirming 3 separate times that Bernice was going to receive that service, Bernice was not provided the promised gate-to-gate escort to take her to

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 8

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

the next gate for her flight back to Spokane, Washington, and instead, was forced to find her own gate without the required escort.

58.    The connecting flight on Alaska 2346 was supposed to depart from Portland, Oregon on June 7, 2017 at 10:27 p.m. and arrive in Spokane, Washington at 11:29 p.m.

59.    Without the gate-to-gate escort, Bernice, a vulnerable adult, became confused and began following the crowd through the Portland International Airport (even stopping at an Airport store and security checkpoint) looking for her return flight back to Spokane.

60.    At approximately 9:02 p.m., while traveling through the Portland International Airport attempting to locate her gate and return flight, Bernice sustained fatal injuries when her wheelchair tumbled down an escalator causing her to fall forward slamming her face into the escalator stairs.

61.    Bernice believed that she was entering onto the elevator when she approached the top of the escalator.

62.    Bernice's several hundred-pound wheelchair remained on top of her as she traveled down approximately 21 escalator steps before the escalator was stopped at the bottom with the wheelchair remaining on top of her.

63.    The wheelchair remained on top of Bernice at the bottom of the escalator for over a minute before being assisted up by several bystanders at the bottom of the escalator.

64.    Emergency personnel responded to Bernice.

65.    Bernice was crying and screaming in pain when the emergency personnel treated her.

66.    Bernice told the EMT's that she "just got confused."

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 9

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

67.     Bernice was rushed to the emergency room at the Legacy Emanuel Medical Center (the "Hospital") and entered into the trauma unit.

68.     **Had Bernice's family known this gate-to-gate assistance was not going to be provided on the trip at issue, they never would have sent her on that trip.**

### After Putting Bernice In the Hospital Trauma Unit, Alaska Airlines Charged Her Family to Fly To Portland to See Bernice In the Trauma Unit

69.     Bernice's family received a phone call from Alaska Airlines using the phone numbers in their system associated with the gate-to-gate escort request.

70.     During that phone call, Alaska Airlines informed the family that Bernice had fallen down the escalator in her wheelchair and had been rushed to the trauma unit at the Hospital.

71.     During that phone call, Bernice's family asked Alaska Airlines where was the gate-to-gate escort for Bernice that was requested by Bernice and her family.

72.     Alaska Airlines did not have any explanation for its failure to provide the requested assistance.

73.     Alaska Airlines' own notes taken the night of the fall by its agent acknowledge that Bernice and her family had requested assistance between flights, but "there was no one there to assist her."

74.     Those Alaska Airlines notes further state that upon arrival Bernice was left with her wheelchair and no one to assist her to the connecting gate.

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 10

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

75.     Despite its action resulting in Bernice being rushed to the trauma unit at the Hospital, Alaska Airlines then charged Bernice's daughter and granddaughter $176.40 each to fly to Portland, Oregon so they could see Bernice in the Hospital trauma unit.

76.     Alaska Airlines further failed to provide Bernice's daughter and granddaughter with assistance with the hotel and rental car needed to stay and get to Bernice in the Hospital trauma unit.

### Bernice's Initial Injuries From the Fall

77.     The Port of Portland Airport Fire Department "Pre-Hospital Care Report" described Bernice's accident as a "significant fall in wheelchair" and "Fall down escalator with traumatic injury."

78.     Bernice suffered the following initial injuries in the fall: skin tear of left forearm and pain; laceration of the left forearm; skin tear of right forearm; laceration of the right forearm; skin tear of right lower leg; laceration of the right lower leg; acute pain and trauma; left shoulder pain; right shoulder pain; head injury; vertical skin tears and teeth marks to the left face; chipped front tooth; knee abrasions; level II trauma; chest pain; potential spinal cord or ligamentous injury; abrasion to left knee; constant severe pain in her right leg; head pain; headaches; moaning in pain; groaning in pain; crying and screaming; very little sleep; severe right ankle pain; right heel pain; skin tear over the right Achilles; and an ulcer wound on her right Achilles heel, among other severe injuries.

79.     Bernice's initial hospital bill totaled over $35,000.00.

80.     The wound on Bernice's right Achilles Tendon would cause her right leg/foot to be amputated and result in her death.

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 11

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

81.     Bernice did not have that wound prior to the fall.

**Bernice Spent the Last Few Months Of Her Life**
**Immobile and In Unbearable Pain and Agony**

82.     Before the accident, in the comfort of her home and familiar surroundings, Bernice could stand, dress herself, take a shower, use the restroom alone, cook for herself and her family, do laundry, get in and out of bed, get in and out of her wheelchair, and walk with a walker, among other activities.

83.     Following the accident, Bernice suffered constant and severe pain in her right leg and foot, numbness and tingling in her right leg and foot and severe swelling in her right foot.

84.     After the accident, Bernice suffered from an inability to sleep due to pain, including screaming and crying, a decreased appetite, depression, stress, and anxiety.

85.     After the accident, Bernice took increased pain medications, including, Hydrocodone and Oxycodone every 6 hours.

86.     Even more, Bernice spent the remaining few months of her life permanently immobile, as she was unable to stand, dress herself, take a shower, use the restroom alone, cook for herself and her family, do laundry, get in and out of bed, get in and out of her wheelchair, or walk, among other activities.

87.     Helping Bernice perform these routine activities required two people to move her and her family often had to use a Hoyer Lift to transfer Bernice from a sitting to standing position in order to transport her.

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 12

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

88.     After the accident, most of the time, Bernice had to use a commode chair to go to the bathroom and wear diapers in case her family was unable to assister her to the bathroom in time.

89.     Bernice expressed to her family that she felt like a burden because her family was required to provide her around-the-clock care.

90.     Bernice's family took shifts taking care of Bernice during the day, overnight and taking her to her multiple weekly doctors' appointments.

91.     This took a severe financial and emotional toll on Bernice and her family.

### The Wound on Bernice's Right Achilles Tendon Caused Her To Suffer Severe Pain, Caused Her Leg to Be Amputated, and Then, Caused Her Death

92.     Bernice's right Achilles Tendon had a severe wound from the fall.

93.     That wound caused severe swelling in Bernice's right foot.

94.     Bernice could not place any pressure on her right foot and woke up screaming, crying and banging on the walls at night from the pain.

95.     Because of the severe swelling in Bernice's right foot from the wound, her family had to take her to the emergency room four additional times.

96.     In that regard, on June 29, 2017, on Bernice's 75th birthday, due to the pain, her dialysis treatment had to be stopped early and an ambulance was called to take her to the emergency room.

97.     While Bernice's family was helping her into her wheelchair, Bernice fell to the ground in the parking lot on her 75th birthday.

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 13

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

98.     Bernice was referred to a wound care clinic to treat the wound on her right Achilles Tendon in an effort to avoid an amputation.

99.     The wound was described as a "Non-Healing Wound."

100.    Doctors at the wound care clinic "debrided" her right Achilles Tendon wound and that included scraping away the exposed non-viable portion of her right Achilles Tendon with a blade.

101.    The loss of mobility and the fear of amputation of her remaining leg caused Bernice to suffer extreme fear, anxiety and depression.

102.    Every time the doctors discussed with Bernice the possibility of her losing her remaining right leg and foot from the accident, Bernice broke down sobbing.

103.    Bernice suffered from conscious pain and suffering, as well as the fear and dread of losing her leg and even her own death.

### Alaska Airlines Refused to Help
### Bernice and Her Family

104.    Alaska Airlines refused to help Bernice and her family after the accident, despite knowing what Bernice was going through because of its failure to provide gate-to-gate assistance, and in spite of the family requesting help.

105.    At the same time Alaska Airlines refused to help Bernice and her family, Alaska Airlines accepted Bernice's money for her flights (and luggage), and required her family to pay for additional flights to get to Bernice at the Hospital trauma unit.

### Bernice's Amputation and Death

106.    On September 6, 2017, Bernice was admitted to the hospital because the wound on her right leg and foot caused by Alaska Airlines and Huntleigh went septic.

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 14

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

107. Bernice would never leave that hospital before dying.

108. The hospital performed surgery on Bernice's right leg and foot that included splitting her calf open in an attempt to remove the infection stemming from the wound on her right Achilles Tendon.

109. On September 19, 2017, Bernice received a below the knee amputation of her only remaining leg and foot in an attempt to save her life from the wound on her right Achilles Tendon.

110. Between her injury and her death, Bernice incurred almost $300,000.00 in medical bills to treat her injuries from the fall.

111. On September 20, 2017, Bernice died, when her blood pressure never fully recovered from the surgery.

112. During the entire period Alaska Airlines (and its agent Huntleigh) refused to help Bernice and her family after causing the accident that would result in her death, Alaska Airlines turned in record profits in 2016 of $911,000,000.

## V.   FIRST CAUSE OF ACTION – NEGLIGENCE OF ALASKA AIRLINES

113. Plaintiff re-alleges and incorporates herein, all allegations set forth in paragraphs 1 through 112 above.

114. Defendant Alaska Airlines is a common carrier, and as such, Defendant Alaska Airlines owes it passengers the highest degree of care and skill practicable for it to exercise.

115. In the course of the business of Defendant Alaska Airlines, it regularly provides wheelchair gate-to-gate escorts for passengers, including escorts for seniors and elderly passengers and those with disabilities, such as Bernice, a vulnerable adult passenger.

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 15

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

116.   The United States Department of Transportation has enacted regulations codified at 14 C.F.R. Part 382 and includes a duty by Defendant Alaska Airlines to accommodate Plaintiff Bernice's disabilities as she traveled.

117.   Defendant Alaska Airlines is an air carrier within the definition of 14 C.F.R. § 382.5.

118.   14 C.F.R. § 382.91 provides that air carriers such as Defendant Alaska Airlines are required to ensure that individuals with disabilities are provided with assistance in making flight connections and transportation between gates, among other requirements, when requested by or on behalf of a passenger with a disability.

119.   In advance of traveling on Defendant Alaska Airlines, Bernice and her family requested that Defendant Alaska Airlines provide Bernice wheelchair gate-to-gate assistance, including, but not limited to, "assist with aisle chair to board and transfer," "assist to and from gates at all points," and "assistance to gates at all points."

120.   Bernice and her family confirmed on 3 separate occasions that the gate-to-gate assistance would be provided by Alaska Airlines to Bernice.

121.   It was the duty and responsibility of Defendant Alaska Airlines to provide this gate-to-gate escort to Bernice at the Portland International Airport between her Alaska 862 flight that arrived in Portland, Oregon on June 7, 2017 at 8:13 p.m. and her connecting flight on Alaska 2346 that was scheduled to depart from Portland, Oregon at 10:27 p.m. and arrive in Spokane, Washington, at 11:29 p.m.

122.   Upon her arrival, Defendant Alaska Airlines failed to exercise the highest degree of care and skill practicable for the protection and safety of Bernice and breached its

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 16

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

duty by failing to provide her the required gate-to-gate escort between her Alaska 862 and Alaska 2346 flights.

123.    It was foreseeable that Bernice would be injured without the required gate-to-gate escort between flights.

124.    Defendant Alaska Airlines failed to exercise the highest degree of care and skill, required of it as a common carrier, for the protection and safety of Bernice.

125.    Bernice sustained fatal injuries as a direct and proximate result of Defendant Alaska Airlines acts and omissions and failure to exercise the highest degree of care practicable, resulting in a below-the-knee amputation of her only remaining leg on September 19, 2017 and her death on September 20, 2017.

126.    As a direct result of the failure of Defendant Alaska Airlines to exercise the highest degree of care practicable, Plaintiff has incurred damages in an amount to be proven at trial.

127.    Defendants Alaska Airlines and Huntleigh were acting in concert and therefore are jointly and severally liable to Plaintiff under R.C.W. § 4.22.070(1).

**VI.    SECOND CAUSE OF ACTION – NEGLIGENCE OF HUNTLEIGH**

128.    Plaintiff re-alleges and incorporates herein, all allegations set forth in paragraphs 1 through 127 above.

129.    Defendant Huntleigh was acting as the agent of Defendant Alaska Airlines who retained the right to control the manner and means by which Defendant Huntleigh performed services, and pursuant to an express agreement, Defendant Huntleigh regularly provides wheelchair gate-to-gate escorts for passengers on Alaska Airlines' flights, including escorts for

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 17

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

seniors and elderly passengers and those with disabilities, such as Bernice, a vulnerable adult passenger.

130.    14 C.F.R. § 382.91 provides that air carriers such as Defendant Alaska Airlines are required to ensure that individuals with disabilities are provided with assistance in making flight connections and transportation between gates, among other requirements, when requested by or on behalf of a passenger with a disability.

131.    Defendant Alaska Airlines is a common carrier, and Defendant Huntleigh, as its agent, in undertaking transportation of Defendant Alaska Airlines' passengers from gate-to-gate, is acting as a common carrier and owes passengers the highest degree of care and skill practicable for it to exercise.

132.    In advance of traveling on Defendant Alaska Airlines, Bernice and her family requested that Defendant Alaska Airlines provide wheelchair gate-to-gate assistance, including, but not limited to, "assist with aisle chair to board and transfer," "assist to and from gates at all points," and "assistance to gates at all points."

133.    Bernice and her family confirmed on 3 separate occasions that the gate-to-gate assistance would be provided for Bernice.

134.    It was the duty and responsibility of Defendant Huntleigh, as Defendant Alaska Airlines' agent, to provide this gate-to-gate escort service to Bernice at the Portland International Airport between her Alaska 862 flight that arrived in Portland, Oregon on June 7, 2017 at 8:13 p.m. and her connecting flight on Alaska 2346 that was scheduled to depart from Portland, Oregon at 10:27 p.m. and arrive in Spokane, Washington, at 11:29 p.m.

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 18

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

135.    Upon Bernice's arrival, Defendant Huntleigh breached its duty by failing to provide Bernice the required gate-to-gate escort between her Alaska 862 and Alaska 2346 flights.

136.    It was foreseeable that Bernice would be injured without the required gate-to-gate escort between flights.

137.    Bernice sustained fatal injuries as a direct and proximate result of Defendant Huntleigh's acts and omissions, resulting in a below-the-knee amputation of her only remaining leg on September 19, 2017 and her death on September 20, 2017.

138.    As a direct result of the failure of Defendant Huntleigh to provide the gate-to-gate escort, Plaintiff has incurred damages in an amount to be proven at trial.

139.    Defendants Alaska Airlines and Huntleigh were acting in concert and therefore are jointly and severally liable to Plaintiff under R.C.W. § 4.22.070(1).

## VII.    THIRD CAUSE OF ACTION – NEGLIGENT TRAINING AND SUPERVISION BY ALASKA AIRLINES AND HUNTLEIGH

140.    Plaintiff re-alleges and incorporates herein, all allegations set forth in paragraphs 1 through 139 above.

141.    Defendant Alaska Airlines, and Defendant Huntleigh, as its agent, acted negligently in failing to properly abide by the regulations set forth governing the transportation of disabled passengers.

142.    In that regard, 14 C.F.R. § 382.141 provides that Defendants Alaska Airlines and Huntleigh properly train employees in responding to passengers with disabilities.

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 19

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

143. Defendants Alaska Airlines and Huntleigh were negligent in failing to properly train and/or supervise their agents and/or employees in the legally responsible way of dealing with a passenger with disabilities.

144. Plaintiff has incurred damages in an amount to be proven at trial.

## VIII.   SURVIVAL ACTION—DAMAGES TO ESTATE

145. Plaintiff re-alleges and incorporates herein, all allegations set forth in paragraphs 1 through 144 above.

146. The Estate of Bernice Kekona has suffered damages recoverable by the personal representative in the amount of the decedent's probable net earnings had decedent lived her normal life expectancy, medical expenses, funeral expenses, burial expenses, physical and psychological pain and suffering from the time of injury to the time of death, including her pre-death knowledge, suffering, anxiety and fear of the pending amputation of her only remaining leg and awareness of her impending death, estate administration costs, including attorneys' fees, out-of-pocket expenses, and such other damages as are proven at trial.

147. Plaintiff is entitled to prejudgment interest on all medical expenses, funeral expenses and burial expenses directly and proximately caused by the wrongdoing of Defendants Alaska Airlines and Huntleigh as named in this Complaint for Survival Action and Wrongful Death.

## IX.   DAMAGES—WRONGFUL DEATH

148. The personal representative for the Estate of Bernice Kekona, on behalf of her eight statutorily designated beneficiaries, Kenneth R. Kekona Jr., Darlene Bloyed, Charlene

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 20

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

Kaaa, Mary Kekona, George Kekona, Seraphia P. Scungio, Phillip Kekona and Maui Kekona, re-alleges paragraphs 1 through 147, as though fully set forth herein.

149.    Kenneth R. Kekona Jr., Darlene Bloyed, Charlene Kaaa, Mary Kekona, George Kekona, Seraphia P. Scungio, Phillip Kekona and Maui Kekona, have incurred the loss of the monetary contributions that their mother Bernice Kekona would have made to each of them as well as the loss of their mother's support, love, affection, care, services, companionship, family guidance, society, comfort and consortium; and for such other damages as allowed by Washington statutes and the common law and as are proven at trial.

### Prayer for Relief

**NOW, THEREFORE,** Plaintiff prays for Judgment against Defendants Alaska Airlines and Huntleigh, jointly and severally, as follows:

1.    General and special damages;

2.    For non-economic damages;

3.    For past medical expenses;

4.    For funeral and burial expenses;

5.    For damages under the wrongful death statutes R.C.W. § 4.20.010 and R.C.W. § 4.20.020;

6.    For damages under the survival statutes R.C.W. § 4.20.046 and R.C.W. § 4.20.060;

7.    Reasonable attorney's fees and costs;

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 21

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

8.    Cost of the suit and pre- and post-judgment interest on any award or judgment; and

9.    Such other and further relief as the Court may deem just and proper.

Dated this **27ᵗʰ** day of December, 2017.

RANDALL | DANSKIN, P.S.

By: _Brook C._____
    Brook Cunningham, WSBA #39270
    Troy Nelson, WSBA #27274
    Attorneys for Plaintiff

COMPLAINT FOR SURVIVAL ACTION
AND WRONGFUL DEATH - 22

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052