THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ESTATE OF BERNICE KEKONA,

Plaintiffs,

v.

ALASKA AIRLINES, INC., *et al.*,

Defendants.

CASE NO. C18-0116-JCC

ORDER

This matter comes before the Court on Defendant Alaska Airlines, Inc.'s and Defendant Alaska Air Group, Inc.'s (collectively "Alaska") motion to dismiss (Dkt. No. 14). Having thoroughly considered the parties' briefing and the relevant record, the Court DENIES the motion for the reasons explained herein.

I. **BACKGROUND**

The following facts are based on the complaint (Dkt. No. 1-2). Bernice Kekona was a round-trip ticketed Alaska passenger, travelling from Maui to Spokane, connecting through Portland. (*Id*. at 5–8.) At the time, Ms. Kekona was a vulnerable adult who became confused when outside of familiar environments. (*Id*. at 6.) She had physical, visual, auditory, and mental impairments, and used an electric wheelchair for mobility. (*Id*. at 5–6.) Members of her family possessed a durable power of attorney, allowing them to make financial and medical decisions on her behalf. (*Id*. at 5.)

Ms. Kekona was returning home from a trip she had taken to visit her children in Hawaii. (*Id*. at 5, 8–9.) When purchasing her round-trip ticket with Alaska, Ms. Kekona requested "'mobility/wheelchair' assistance for the entire trip." (*Id*. at 5) For a passenger with an electric wheelchair, this includes assistance on and off the airplane and a "gate-to-gate" escort. (*Id*. at 5–6.) Alaska includes passengers requesting the service on a "Special Services" list it keeps for each flight. (*Id*.) Ms. Kekona was on that list for the entirety of her round trip. (*Id*. at 7.)

In Portland, Alaska contracts with Defendant Huntleigh USA Corporation ("Huntleigh") to provide this service. (*Id*. at 8.) Ms. Kekona's family contacted Alaska three times to confirm the airline would provide the service before Ms. Kekona's return flight, the final time being at the gate in Maui, just prior to her departure. (*Id*. at 7.) Alaska claims it notified Huntleigh that Ms. Kekona requested gate-to-gate service in Portland. (*Id*. at 8.) Huntleigh asserts Alaska failed to notify it that Ms. Kekona requested anything more than assistance exiting the aircraft. (*Id*.) Accordingly, when Ms. Kekona's flight from Miami arrived in Portland, Huntleigh employees assisted Ms. Kekona off the aircraft and transferred her to her electric wheelchair at the bottom of the sky bridge. (*Id*.) Huntleigh employees left Ms. Kekona when she reached the top of the sky bridge. (*Id*.) Ms. Kekona then showed her ticket to an Alaska employee, who pointed her in the direction of her next gate and did no more. (*Id*.)

Ms. Kekona attempted to find her gate, but ended up driving her wheelchair onto the top of an escalator. (*Id*. at 9.) She tumbled down the escalator, with her motorized wheelchair landing on top of her. (*Id*.) She suffered serious injuries. (*Id*.) She indicated to responding emergency personnel that she "just got confused" and mistook the top of the escalator for an elevator. (*Id*.) Ms. Kekona died three-and-a-half months later from complications resulting from her June 7, 2017 injuries. (*Id.* at 15, 17.)

Ms. Kekona's estate brought negligence, negligent training and supervision, survival, and wrongful death actions against Alaska and Huntleigh in King County Superior Court. (Dkt. No. 1-2 at 1, 15–21.) Alaska removed the matter to this Court pursuant to 28 U.S.C. sections 1441

and 1446, based on the federal question implicated by the complaint, which asserts a breach of Alaska's duty to Ms. Kekona, as established by the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705, *et seq.* (Dkt. No. 1 at 1); *see* 28 U.S.C. § 1331. Alaska now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting Ms. Kekona's estate fails to state a claim upon which relief can be granted. (Dkt. No. 14 at 1.) Specifically, Alaska alleges that: (1) the complaint fails to plead plausible grounds to pierce Alaska Air Group's corporate form, thereby precluding liability for acts or omissions of a subsidiary, Alaska Airlines, Inc.; (2) the AACA and its associated regulations preempt claims presented in the complaint; and (3) the complaint fails to plead plausible grounds that Alaska negligently trained or supervised its employees. (Dkt. No. 14 at 1–2.)

## II. DISCUSSION

### A. Legal Standard: Motion to Dismiss[1]

A defendant may move to dismiss a complaint when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To grant a motion to dismiss, the Court must be able to conclude that the moving party is entitled to judgment as a matter of law, even after accepting all factual allegations in the complaint as true and construing them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). To survive a motion to dismiss, a plaintiff must merely cite facts supporting a "plausible" cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). Although the Court must accept as true a complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will generally not defeat

---

[1] The Court declines Plaintiff's request to convert Alaska's motion to one seeking summary judgment. (Dkt. No. 17 at 19–20.) Accordingly, the Court will not consider facts outside of those presented in the complaint in rendering this decision. *See U.S. v. Ritchie*, 342 F.3d 902–03, 908 (9th Cir. 2003).

an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. County,* 487 F.3d 1246, 1249 (9th Cir. 2007). However, "'some latitude' may be appropriate where a plausible claim may be indicated 'based on what is known,' at least where . . . 'some of the information needed may be in control of [the] defendants.'" *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)) (alteration in original); *see Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017), *cert. denied sub nom.* 138 S. Ct. 642 (2018) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)) (facts included in complaint need only be "suggestive" of unlawful conduct to survive a motion to dismiss); *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017) (information that could only be obtained through discovery need not be included in a complaint).

### B. Piercing the Corporate Veil

Alaska asserts the complaint "fails to state plausible factual allegations to pierce Alaska Air Group's corporate form and impose liability against it for the alleged acts or omissions of its separately incorporated subsidiary, Alaska Airlines, Inc." (Dkt. No. 14 at 5–6.) To pierce the corporate veil, a plaintiff must show that the corporate form was used to violate or evade a duty and that the corporate veil must be disregarded in order to prevent loss to an innocent party. *Wash. Water Jet Workers Ass'n v. Yarbrough*, 90 P.3d 42, 58 (Wash. 2004).

Plaintiff alleges upon information and belief that, "[Alaska Air Group, Inc. is the] holding company for Alaska Airlines, Inc. and is responsible for the acts, omissions and other wrongful conduct of Alaska Airlines, Inc. At all relevant times, Alaska Air Group, Inc. exercised such dominion and control over Alaska Airlines, Inc. that it is liable." (Dkt. No. 1-2 at 3.) Plaintiff goes on to plead Alaska's duty to Ms. Kekona, the manner in which that duty was violated, and Ms. Kekona's resulting pain, injury, and eventual death. (*See generally* Dkt. No. 1-2.)

Information necessary to demonstrate the relationship between Alaska Air Group, Inc. and Alaska Airlines, Inc. is solely within Alaska's control and knowledge. Therefore, additional facts supporting Plaintiff's allegations are only available through discovery. Accordingly, the

Court finds Plaintiff's allegations regarding Alaska's corporate structure sufficient to survive Alaska's motion to dismiss. "The critical question under *Twombly* and *Iqbal* is plausibility." *Montantes v. Inventure Foods*, C14-1128-MWF, slip op. at 7 (C.D. Cal. July 2, 2014). Plaintiff has plead sufficient facts to plausibly support liability on the part of Alaska Air Group, Inc. for the alleged actions of Alaska Airlines, Inc. and its agents. Accordingly, the Court DENIES Alaska's motion to dismiss.

**C.      Preemption**

Alaska asserts the ACAA preempts Plaintiff's tort claims, as described in the complaint. First, Alaska alleges that the complaint fails to address Defendants' standard of care for Ms. Kekona, as provided by the ACAA, or to provide facts demonstrating that Defendants breached this standard of care. (Dkt. No. 14 at 8–20.) Second, Alaska alleges that the imposition of tort liability under the circumstances described in the complaint conflict with the ACAA. (*Id.* at 20–23.)

The Supreme Court has identified two "cornerstones" of preemption jurisprudence. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). "First, the purpose of Congress is the ultimate touchstone in every preemption case." *Id.* (internal quotation marks and citation omitted). Second, there is a "presumption against preemption"—the Court assumes that Congress does not intend to supersede a state act, particularly in traditional areas of state regulation, "unless that was the clear and manifest purpose of Congress." *Id.* Congress may preempt state law either expressly, by using clear statutory language, or implicitly. *See Whistler Invs., Inc. v. Depository Trust & Clearing Corp.*, 539 F.3d 1159, 1164 (9th Cir. 2008). There are two types of implied preemption: field preemption and conflict preemption. *Id.* Field preemption describes when Congress has "so thoroughly occupie[d] a legislative field" that states simply have no room to regulate conduct in that field. *Id.* Conflict preemption describes a situation when it is either impossible for a party to comply both with federal and state requirements or when, "in light of the federal statute's purpose and intended effects, state law poses an obstacle to the

accomplishment of Congress's objectives." *Id*. The Ninth Circuit has previously held that the ACAA and associated U.S. Department of Transportation ("DOT") regulations do not preempt tort claims against an air carrier, but do provide the relevant standard for the Court to consider in claims brought by disabled passengers. *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995 at 1006 (2013).

Alaska first alleges that the complaint is deficient in not providing facts to support Defendants' violation of the standard of care as provided by the ACAA. The Court disagrees. The complaint describes the relevant standard of care, as provided by DOT regulations. According to the complaint, "14 C.F.R. § 382.91 provides that air carriers such as Defendant Alaska Airlines are required to ensure that individuals with disabilities are provided with assistance in making flight connections and transportation between gates, among other requirements, when requested by on or on behalf of a passenger with a disability." (Dkt. No. 1-2 at 16.) The complaint then provides sufficient facts to demonstrate that Alaska failed to provide this assistance, despite repeated requests by Ms. Kekona and her family to do so. (*Id*. at 5–10, 15–22.)

Nor does the Court agree with Alaska's argument that, because the complaint does not allege that Ms. Kekona affirmatively sought assistance from Alaska representatives once Huntleigh personnel left, Alaska was absolved of its obligation. (See Dkt. No. 19 at 8.) The complaint alleges that Ms. Kekona affirmatively sought Alaska's assistance at the top of the jet way and that insubstantial assistance was rendered. According to the complaint, Ms. Kekona was on a "special services" list, she "showed [the Alaska agent] her ticket" at the top of the jet way, yet the agent merely "pointed [Ms. Kekona] where to go, but again, failed to provide her the gate-to-gate assistance as required." (*See* Dkt. No. 1-2 at 6, 8). Furthermore, the complaint alleges that Ms. Kekona and her family, some of whom held a power of attorney on Ms. Kekona's behalf, repeatedly requested gate-to-gate assistance before she boarded her outbound

flight from Maui. (*Id*. at 5–10, 15–22.)[2]

Alaska next alleges that conflict preemption applies to Plaintiff's claims. (Dkt. No. 14 at 20.) But the Ninth Circuit has previously rejected Alaska's argument in a comparable case. *Gilstrap*, 709 F.3d at 1008–11.[3]

Accordingly, the Court DENIES Alaska's motion to dismiss on this basis.

### D.     Failure to Train or Supervise

Finally, Alaska asserts the complaint is deficient in failing to provide sufficient facts to establish plausible negligence claims based on a failure to train and/or supervise. (Dkt. No. 14 at 23.) This argument fails for the same reason that Alaska's first argument fails. *See supra* section II.B. According to the complaint, "Defendants . . . were negligent in failing to properly train and/or supervise their agents and/or employees in the legally responsible way of dealing with a passenger with disabilities." (Dkt. No. 1-2 at 20.) The complaint includes facts that support this assertion: repeated requests for assistance by Ms. Kekona and her family before her flight, Ms. Kekona's inclusion on the special services list, and her attempt to seek assistance at the top of the jet way. (*See generally* Dkt. No. 1-2 at 5–10, 15–22.) Yet no assistance was provided. (*Id*.) This plausibly implies negligent training and/or supervision. *See Arista Records*, 604 F.3d at 120 (describing a plausible "inference of culpability"). Any additional facts regarding Defendants' training and supervision policies are not available to Plaintiff at this pre-discovery stage in the proceedings. *See id.* (relaxing *Iqbal's* plausibility standard for a complaint lacking facts that are "peculiarly within the possession and control of the defendant"). Plaintiff has plead sufficient facts to bring a plausible claim of negligent training and/or supervision.

---

[2] In addition, the cases Alaska cites in its motion to dismiss are easily distinguishable from this case. (*See* Dkt. No. 14 at 13–16) (citing *Auditori v. Sky Harbor Int'l Airport*, 880 F. Supp. 696, 699 (D. Ariz. 1995); *Glass v. Nw. Airlines, Inc.*, 761 F. Supp. 2d 734, 739–47 (W.D. Tenn. 2011); *Glatfalter v. Delta Airlines, Inc.*, 558 S.E. 2d 793, 796–97 (Gt. Ct. App. 2002)).

[3] The cases Alaska cites are again easily distinguishable. (*See* Dkt. No. 14 at 20–22) (citing *Ventress v. Japan Airlines*, 747 F.3d 716, 719–22 (9th Cir. 2014); *Montalvo v. Spirit Airlines*, 508 F.3d 464, 472–73 (9th Cir. 2007)).

Accordingly, the Court DENIES Alaska's motion to dismiss.

## III. CONCLUSION

For the foregoing reasons, Alaska's motion to dismiss (Dkt. No. 14) is DENIED, as is Plaintiff's request to convert Alaska's motion to one seeking summary judgment (Dkt. No. 17 at 19–20.)

DATED this 14th day of March 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE